UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PROMOTIONAL MARKETING INSIGHTS, INC., | Case No. 11-CV-2795 (PJS/AJB) |
| Plaintiff, | |
| v. | ORDER |
| AFFILIATED COMPUTER SERVICES, INC., | |
| Defendant. | |

Kelly G. Laudon, J.H. Strothman, Jonathan M. Bye, and Carol R. Washington, LINDQUIST & VENNUM PLLP, for plaintiff.

Christopher A. Young and Alan H. Maclin, BRIGGS AND MORGAN, P.A., for defendant.

Plaintiff Promotional Marketing Insights, Inc. ("PMI") alleges that defendant Affiliated Computer Services, Inc. ("ACS") breached the parties' contract by failing to pay compensation to which PMI is entitled. This matter is before the Court on ACS's objection to the June 4, 2012 discovery order of Chief Magistrate Judge Arthur J. Boylan. A magistrate judge's ruling on nondispositive pretrial matters may be reversed only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Having reviewed Judge Boylan's order and the parties' submissions, the Court finds that the order is neither clearly erroneous nor contrary to law. The order is therefore affirmed.

ACS objects to two aspects of the June 4 order. First, ACS objects to the requirement that it produce its audit work papers. ACS argues that these documents are protected from disclosure by various state confidentiality statutes. But, as Judge Boylan recognized, the relevant question is not whether the documents are *confidential*; the relevant question is whether the

documents are *privileged*. *Cf. In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 (5th Cir. 1998) ("'Confidential' does not necessarily mean 'privileged.'"); *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1205 (9th Cir. 1975) ("The records are confidential but not privileged."). This Court commonly requires parties to produce confidential documents; the confidentiality of those documents is protected not by denying access to them, but by entering a protective order to cover them.

Because this is a diversity case, state law is the source of any applicable privilege. Fed. R. Evid. 501. ACS has identified numerous state statutes providing that audit work papers are *confidential*, but ACS has not contended that any of these statutes creates an evidentiary *privilege*. Indeed, a number of the statutes expressly recognize that the documents may be produced in response to a court order. *See* Ariz. Rev. Stat. § 44-322(D)(3); Idaho Code § 63-3076(1); Me. Rev. Stat. tit. 33, § 1971(4)(C); W. Va. Code § 36-8-20(d)(3); N.D. Cent. Code § 47-30.1.-30.1(1)(c); Tenn. Code Ann. § 66-29-154(a)(3). Likewise, although ACS offers letters from state officials opining that the documents are confidential, these letters do not assert that the documents are privileged. ACS's argument that these materials are "immune" from disclosure thus has no basis in law.

ACS also argues that Judge Boylan erred by not weighing PMI's need for the materials against the harm that could come from disclosure. The Court rejects this contention. Judge Boylan crafted a careful and comprehensive protective order to ensure that there will be *no* harm from disclosure of the audit work papers. At the same time, the audit work papers are clearly relevant to whether PMI "in fact" assisted ACS — which, under ACS's theory of the case, PMI must prove before it can recover the compensation that it seeks. Even if the "balancing" sought

by ACS is necessary, then, Judge Boylan's order properly reflects the fact that the (considerable) probative value of the audit work papers far outweighs the (negligible) harm of disclosure under Judge Boylan's protective order.  The Court therefore affirms this aspect of Judge Boylan's order.

ACS next objects to Judge Boylan's denial of its motion to compel the production of PMI's contracts with third parties.  ACS seeks these contracts in order to prove that it was fraudulently induced to enter into the contract with PMI and that PMI breached the parties' contract.[1]  Judge Boylan found that ACS's document requests are not reasonably calculated to lead to the discovery of admissible evidence.  The Court agrees, and adds the following:

ACS's theory is premised on its position that PMI contractually represented that, in the course of performing services for ACS, PMI would not violate any other agreement to which PMI is a party.  That is not, however, what the parties' contract says.  The contract contains a covenant from PMI to ACS as follows:  "[PMI] acknowledges this Agreement does not violate any other agreement in which it is a party."  Compl. Ex. 2 § 6(b).  This is not, as ACS would have it, a promise that PMI will not in the *future* violate any of its contracts with third parties; it is a promise that "this Agreement" — that is, the ACS-PMI contract — did not, on the day it was signed, violate any of PMI's contracts with third parties.  ACS does not contend that, merely by entering into the ACS-PMI contract, PMI violated a contract with a third party.  Even if, as ACS believes, PMI *later* breached a third-party contract in the course of performing services for ACS,

---

[1] There are actually several contracts between ACS and PMI; the Court is referring to what the parties generally call the "2007 Agreement."

those breaches would not violate PMI's covenant in the ACS-PMI contract. Those third-party contracts are therefore not relevant to ACS's claims and defenses.

In its objection, ACS points out that the parties' contract also says that, "[w]hen reasonably possible, PMI will identify situations where information being sought by ACS would be a breach of a pre-existing agreement between PMI and another party."[2] ECF No. 1-2 at 12. Like the covenant discussed above, however, this is not a representation that PMI will not breach its contracts with third parties. It is merely a representation that, when ACS seeks information that PMI cannot provide without breaching a third-party contract, PMI will let ACS know — "[w]hen reasonably possible."

Moreover, describing this statement as a "representation" is generous. It does not appear in the section entitled "Special Covenants and Representations of [PMI]." *See* Compl. Ex. 2 § 6. Indeed, it does not appear in the contract at all; rather, it is in an exhibit, attached to the contract, which appears to be a written presentation from PMI to ACS. The contract does not incorporate the exhibit; instead, the contract refers to the exhibit for a definition of the services that PMI was to provide and states that, in case of any conflict between the contract and the exhibit, the contract controls. Compl. Ex. 2 §§ 1, 8.

Even if this language was a part of the parties' contract, there is no indication that ACS relied on it in entering the contract, as would be necessary to prove a defense of fraudulent inducement. The declaration of the former ACS representative to which ACS points does not cite this language; it says only that the representative relied on the covenant (discussed above)

---

[2] Although ACS mentioned this language at the May 24 hearing, it did not cite or rely on it in its brief to Judge Boylan.

that "this Agreement does not violate any other agreement in which [PMI] is a party." *See* ECF No. 19.

Finally, as Judge Boylan noted, ACS does not identify any damages that it may have suffered as a result of a breach of PMI's promise (if it was a promise) that PMI would, "[w]hen reasonably possible . . . identify situations where information being sought by ACS would be a breach of a pre-existing agreement between PMI and another party." In short, it appears to the Court, as it did to Judge Boylan, that ACS is simply on a fishing expedition.

For these reasons, the Court affirms Judge Boylan's order in all respects.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's objection [ECF No. 38] is OVERRULED and the June 4, 2012 order [ECF No. 34] is AFFIRMED.

Dated: August 13, 2012                              s/Patrick J. Schiltz
                                                    Patrick J. Schiltz
                                                    United States District Judge